UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRCT OF NEW YORK

| | |
|---|---|
| LIGADO NETWORKS LLC and<br>LIGADO NETWORKS (CANADA) INC,<br><br>　　　　　　　　　　　　　　*Plaintiffs*,<br><br>　　　　v.<br><br>INMARSAT GLOBAL LIMITED,<br><br>　　　　　　　　　　　　　　*Defendant* | Case No. 25-2836<br><br>Index No. 651526/2025<br>(*pending in New York State Supreme Court, New York County*) |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Inmarsat Global Limited ("Inmarsat") hereby submits this Notice of Removal pursuant to 28 U.S.C. §§ 1334, 1452(a), and Federal Rule of Bankruptcy Procedure 9027 to remove to this Court the action pending in New York State Supreme Court, New York County, under Index No. 651526/2025. *See* N.Y. State Compl. (Ex.[1] A). Inmarsat respectfully states as follows:

### INTRODUCTION AND SUMMARY

1.　　Under the bankruptcy removal statute, 28 U.S.C. § 1452, state court actions may be removed to federal court if they either (a) involve "core" bankruptcy matters or (b) are "related to" a pending bankruptcy. *See KeyBank Nat'l Ass'n v. Franklin Advisers, Inc.*, 600 B.R. 214, 225 (S.D.N.Y. 2019). "Core" matters include those affecting estate administration or the debtor's reorganization, and the broader category of matters "related to" a pending bankruptcy includes any proceeding that could conceivably have any effect on the estate. *See Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.*, 487 B.R. 158, 162 (S.D.N.Y. 2013);

---

[1] "Ex." refers to the exhibits attached to the Declaration of Charles Michael in Support of Notice of Removal filed contemporaneously with this Notice.

*KeyBank Nat'l Ass'n*, 600 B.R. at 225. Either ground supports removal here. Indeed, Plaintiffs (collectively, "Ligado") have expressly stated that this litigation "will have an effect on the Company's emergence from Chapter 11 bankruptcy." *See* Ligado Ch. 11 Plan Disclosure Statement,[2] at 136 (Ex. B).

2.     As detailed below, Ligado seeks to "reform" and to recover billions of dollars in damages under a 100-year "Cooperation Agreement" with Inmarsat that was the alleged cause of Ligado filing for bankruptcy in the District of Delaware, and that is now at the heart of its planned exit. The connection to the bankruptcy case is evident from the fact that Ligado first brought essentially the same claims in an adversary proceeding in the Delaware bankruptcy case and described the action as a "core" bankruptcy proceeding. Ligado voluntarily dropped that case and re-filed nearly identical claims in New York for tactical reasons—Ligado faced a motion to dismiss in Delaware that it apparently recognized it could not overcome. But the new venue does not erase the intertwined nature of this case and the Delaware bankruptcy case where Ligado originally chose to sue. Accordingly, this case is properly removed.

## BACKGROUND

**I.     The Parties and Their Cooperation Agreement**

3.     Inmarsat and Ligado are in the business of satellite communications and are licensed to operate within a very valuable portion of the electromagnetic spectrum (referred to as the "L-band") used to transmit satellite services. *See* N.Y. State Compl. ¶¶ 23-24 (Ex. A). In 2007, Inmarsat's and Ligado's predecessors entered into a "Cooperation Agreement" governing how they would allocate their L-band spectrum rights in North America. *Id.* ¶¶ 25-26.

---

[2] ECF No. 349, *In re Ligado Networks LLC, et al.*, No. 25-10006 (TMH) (D. Del. Bankr. Mar. 22, 2025).

4.     The Cooperation Agreement provided that Inmarsat would allocate a significant portion of the overlapping L-band spectrum rights to Ligado's predecessors—in other words, Inmarsat and its customers would vacate a significant part of the spectrum—in exchange for periodic cash payments for the following 100 years, through 2107. *Id.* ¶ 26; Ligado Ch. 11 Plan Disclosure Statement, at 19 (Ex. B).

## II.    Ligado Fails to Launch Its Network and Sues the U.S. Government

5.     Ligado has long planned to use its allocated L-band spectrum under the Cooperation Agreement to build an "ATC" (Ancillary Terrestrial Component) communications network that integrates satellites and land-based cell towers. *Id.* at 12-14 & n.5.

6.     In April 2020, after years of regulatory challenges, the Federal Communications Commission ("FCC") approved Ligado's ATC network. But Ligado asserts that it has been unable to move forward because federal agencies such as the Department of Defense ("DOD") and other stakeholders objected that the terrestrial component would interfere with GPS signals. *Id.* at 35-42.

7.     Ligado asserts that DOD's GPS objection is a pretext to mask that DOD is allegedly using the spectrum allocated to Ligado for a classified program that is incompatible with Ligado's planned network. *Id.* at 43-45. In October 2023, Ligado sued DOD for what it characterizes as "the largest uncompensated taking of private property by our nation's government in modern time." *See* Ligado "Takings" Compl.,[3] ¶ 1 (Ex. C). Ligado's suit seeks $39 billion in damages. *Id.* ¶ 121.

---

[3] ECF No. 1, *Ligado Networks LLC v. United States of America, et al.*, No. 23-1797L (Fed. Cl. Oct. 12, 2023).

### III. Ligado Files for Bankruptcy and Sues Inmarsat

8. By early January 2025, Ligado had yet to resolve the GPS issues, nor had it otherwise made progress towards its hoped-for ATC network. In addition, Ligado was required to pay Inmarsat $525 million—the culmination of several "deferrals"— by January 13, 2025, plus quarterly payments of approximately $16 million going forward. *See* Ligado Ch. 11 Plan Disclosure Statement, at 21, 118 (Ex. B). With "insufficient liquidity" to make these payments, Ligado was "forced to seek bankruptcy protection." *Id.* at 48. Despite previously filing for bankruptcy in this District, *see In re LightSquared Inc.*, No. 12-12080-scc (Bankr. S.D.N.Y.), Ligado chose to file its latest bankruptcy in the District of Delaware and did so on January 5, 2025. *See* Ligado Ch. 11 Plan Disclosure Statement, at 4, 48 (Ex. B); Ligado Bankruptcy Pet.[4] (Ex. D).

9. Two days later, Ligado filed an Adversary Complaint against Inmarsat in the bankruptcy case. *See* Ligado Adversary Compl.[5] (Ex. E). According to Ligado, the Cooperation Agreement required Inmarsat to either upgrade or replace the tens of thousands of terminals installed on the maritime vessels and planes of Inmarsat customers, so that those terminals would not experience interference from the hypothetical Ligado terrestrial network. *Id.* ¶¶ 34-37. Had Inmarsat complied with this obligation, the theory goes, the FCC license granted in 2020 would not have included certain power limitations near airports and waterways. *Id.* ¶¶ 98-101. Ligado seeks (among other relief) over $1.7 billion in damages, and to "reform" the Cooperation

---

[4] ECF No. 1, *In re Ligado Networks LLC, et al.*, No. 25-10006 (TMH) (D. Del. Bankr. Jan. 5, 2025).
[5] ECF No. 3, *Ligado Networks LLC et al. v. Inmarsat Global Limited*, Adv. Proc. No. 25-5000 (TMH) (D. Del. Bankr. Jan. 9, 2025).

Agreement so that (among other things) Ligado "is no longer obligated to make further payments." *Id*. ¶¶ 164, 169, 172-73, pp. 55-56 (*ad damnum* clause).

10. Ligado alleged that its adversary case was a "core proceeding pursuant to 28 U.S.C. §157(b)." *Id*. ¶ 22.

11. Inmarsat believes that Ligado has gravely misread the Cooperation Agreement, and that Ligado's claims are meritless. Inmarsat accordingly moved to dismiss the Adversary Complaint on multiple grounds, including that several of its claims were barred by Delaware's three-year statute of limitations. *See* Inmarsat Mot. to Dismiss[6] (Ex. F). Rather than oppose the motion, Ligado voluntarily dismissed its case, *see* Ligado Notice of Voluntary Dismissal[7] (Ex. G), and re-filed substantially the same claims in state court in New York, *see* N.Y. State Compl. (Ex. A), presumably hoping to argue that New York's longer statute of limitations should apply.

## IV. The Connection Between the Adversary Claims and the Bankruptcy

12. Both the Cooperation Agreement itself, and Ligado's complaint about Inmarsat's alleged breaches of that agreement, are significantly connected to the administration of the bankruptcy estate and other core bankruptcy functions.

13. The centerpiece of Ligado's reorganization plan is a proposed commercial agreement with AST & Science, LLC ("AST") whereby AST would pay for spectrum usage rights assigned to Ligado under the Cooperation Agreement through the Agreement's expiration in 2107. *See* Ligado Ch. 11 Plan Disclosure Statement, at 5, 15-16 (Ex. B); "First Day" Hr'g

---

[6] ECF No. 25, *Ligado Networks LLC et al. v. Inmarsat Global Limited*, Adv. Proc. No. 25-5000 (TMH) (D. Del. Bankr. Feb. 27, 2025).
[7] ECF No. 31, *Ligado Networks LLC et al. v. Inmarsat Global Limited*, Adv. Proc. No. 25-5000 (TMH) (D. Del. Bankr. Mar. 19, 2025).

Tr.[8], at 9-10 (Ex. H). In lieu of the terrestrial ATC network that never got built, AST plans to deploy the spectrum usage rights Ligado obtained in the Cooperation Agreement to launch a new satellite network that would provide "direct to device" and "Internet of Things" satellite services. That business would be the source for Ligado's past-due and future payment obligations under the Cooperation Agreement, and the primary source of revenue for Ligado when it emerges from bankruptcy. *See* Mot. to Authorize the AST Transaction[9] ¶¶ 14, 16 (third bullet) (Ex. I).

14. Ligado has told the Delaware bankruptcy court that its "capital structure is premised on a business that is entitled to the full benefits of the Cooperation Agreement with Inmarsat." *See* Ligado Ch. 11 Plan Disclosure Statement at 14 (Ex. B). That is true. The AST transaction on which Ligado's future rests simply cannot work without the spectrum rights Inmarsat provides via the Cooperation Agreement.

15. The AST transaction requires FCC approval, which Ligado has budgeted to take up 40 months to complete. *See* "First Day" Hr'g Tr., at 32-33 (Ex. H). But Ligado has made clear that it intends to withhold all payments to Inmarsat (including the $525 million lump sum that was due in January 2025) unless and until that process is successful. In fact, the proposed AST Transaction—which is the subject of a pending motion for the bankruptcy court's approval—***requires*** Ligado to oppose any efforts by Inmarsat to obtain payment sooner. *See* AST Framework Agreement[10] § 5.6 (Ex. J).

---

[8] Tr. of Hybrid Zoom Hearing, *In re Ligado Networks LLC, et al.*, No. 25-10006 (TMH) (D. Del. Bankr. Jan. 7, 2025).

[9] ECF No. 359, *In re Ligado Networks LLC, et al.*, No. 25-10006 (TMH) (D. Del. Bankr. Mar. 26, 2025).

[10] ECF No. 359-3, *In re Ligado Networks LLC, et al.*, No. 25-10006 (TMH) (D. Del. Bankr. Mar. 26, 2025).

16. Consistent with that contractual commitment, Ligado has claimed in the Delaware Bankruptcy Court that it should not be required to pay Inmarsat amounts owed under the Cooperation Agreement until Ligado's claims that started in that Court's adversary proceeding—but are now in this case—are resolved. In the Bankruptcy Court's "first day" hearing, Ligado's counsel described the amounts due to Inmarsat as involving "disputed" amounts "that ***we will have to resolve as part of this bankruptcy***," *see* "First Day" Hr'g Tr., at 25-26 (emphasis added) (Ex. H), and added that a key "objective" in the case was to "deal with our claims that have been filed just today against Inmarsat and resolve what cure amounts may be due, ***if any***, to Inmarsat in connection with the Cooperation Agreement," *id.* at 30-31 (emphasis added). In other words, Ligado's plan from the start has been to use its contract claims in the bankruptcy court to try to delay and potentially offset completely the amounts it owes Inmarsat.

17. When Inmarsat later moved the bankruptcy court to be paid its approximately $16 million quarterly payments on an ongoing basis, *see* Inmarsat Motion to Compel Cooperation Agreement Payments[11] (Ex. K), Ligado opposed the motion because (among other reasons) Ligado is "seeking ***more than $1.7 billion in damages***" in its Adversary Complaint, which "far exceeds any amounts purportedly owed to Inmarsat." Ligado's Objection to Motion to Compel,[12] ¶ 1 (Ex. L) (emphasis in original). *See also id.* ¶ 59 (arguing that Ligado would be prejudiced if "forced to make current payments to Inmarsat and is later successful in the Adversary Proceeding"). That motion is pending before the bankruptcy court.[13]

---

[11] ECF No. 193, *In re Ligado Networks LLC, et al.*, No. 25-10006 (TMH) (D. Del. Bankr. Feb. 6, 2025).
[12] ECF No. 268, *In re Ligado Networks LLC, et al.*, No. 25-10006 (TMH) (D. Del. Bankr. Feb. 25, 2025).
[13] Inmarsat disputes that Ligado's meritless, unliquidated claims can be grounds to delay or offset the overdue amounts that Ligado must pay if it wants to continue to enjoy the benefits

7

18. Also soon to be pending before the bankruptcy court is the issue of when, and in what amount, Inmarsat should be paid in connection with the $525 million past due amount that led to Ligado's bankruptcy in the first place. Ligado's bankruptcy petition lists Inmarsat on its schedule of creditors, and describes Inmarsat's claim as "Contingent, Unliquidated & Disputed." *See* Ligado Bankruptcy Pet., at pg. 6 of 25 (Ex. D). Inmarsat will shortly be filing a proof of claim to fix that amount and, ultimately, to be paid what is long overdue. Based on the fact that Ligado describes the claim as "Disputed," and on Ligado's contractual commitment to oppose any payment to Inmarsat, *see* AST Framework Agreement § 5.6 (Ex. I), Ligado will likely respond that Inmarsat's claim must be delayed and/or offset because of the claims that Ligado is now asserting in this case. *See* "First Day" Hr'g Tr., at 25-26, 30-31 (Ex. G).

19. Finally, the connection between this case and Ligado's bankruptcy is evident by a specific risk disclosure in Ligado's Chapter 11 Plan Disclosure Statement about how this case "*will*" affect Ligado's emergence from bankruptcy:

> [C]ertain of the Debtors filed a complaint in New York County Supreme Court under the caption *Ligado Networks LLC, and Ligado Networks (Canada) Inc., v. Inmarsat Global Limited*. The Company may not ultimately prevail in the Inmarsat litigation, or if it does prevail, it may not receive the full amount of its claim for damages. Even if the Company is successful in this litigation, the damages amount is uncertain and ***will have an effect on the Company's emergence from Chapter 11 bankruptcy***.

*S*ee Ligado Ch. 11 Plan Disclosure Statement, at 136 (emphasis added) (Ex. B).

## GROUNDS FOR REMOVAL

20. Under 28 U.S.C. § 1452(a) "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such

---

of the Cooperation Agreement. Inmarsat highlights Ligado's arguments only to emphasize that Ligado itself has injected the underlying claims here into the bankruptcy case.

district court has jurisdiction of such claim or cause of action under [28 U.S.C. § 1334],"  which, in turn, provides for original jurisdiction "of all civil proceedings . . . [1] arising in or [2] related to cases under title 11." 28 U.S.C. §§ 1452(a), 1334(b).

21. The first jurisdictional ground, for a claim that "'arises in' Title 11," turns on "whether the dispute is a core proceeding." *KeyBank Nat'l Ass'n*, 600 B.R. at 227. Core proceedings often involve statutory claims under bankruptcy law, but "[c]ommon-law claims closely connected with the administration of the bankruptcy can qualify" as well, *Lothian Cassidy, LLC*, 487 B.R. at 162, including (but not limited to) where the litigation may affect the ultimate amount a creditor is entitled to recover from the debtor. That is because "[n]othing is more directly at the core of bankruptcy administration . . . than the quantification of all liabilities of the debtor." *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2d Cir. 1995) (quoting *In re BKW Sys. Inc.*, 66 B.R. 546, 548 (Bankr. D.N.H. 1986)). While Inmarsat disputes that its claim can be reduced at all, Ligado contends otherwise—and the bankruptcy court will have to decide that issue.

22. Also included under the rubric of "core" claims are those pertaining to contracts that (like the Cooperation Agreement here) are key to a bankruptcy plan, administration, or other core bankruptcy functions. *See*, *e.g.*, *In re Charter Comm'ns*, 409 B.R. 649, 657 (Bankr. S.D.N.Y. 2009) (breach of contract claim that "directly affects, *inter alia*, confirmation of the bankruptcy plan" held to be "quintessentially core") *In re Navin*, 382 B.R. 6, 16 (E.D.N.Y. 2007) (dispute over a right of first refusal to a lease, the "key asset of the Debtor," deemed "core").

23. The second jurisdictional ground, for proceedings "related to" a bankruptcy case, is broader. "A civil proceeding is related to a bankruptcy case when the outcome of that

proceeding could conceivably have any effect on the estate." *See In re 305 E. 61st St. Grp. LLC,* 130 F.4th 272, 283 (2d Cir. 2025) (cleaned up).

24. Here, the underlying case is a "core" proceeding. But at a minimum, it is "related to" the ongoing bankruptcy proceedings in Delaware. There is a significant connection between, on the one hand, the claims and the Cooperation Agreement, and, on the other, administration of the bankruptcy case and Ligado's reorganization. As discussed above:

- Ligado's New York complaint advances claims that it originally brought in the bankruptcy case and described as "core" bankruptcy claims. *See* Ligado Adversary Compl., ¶ 22 (Ex. E).

- Ligado's counsel described its claims against Inmarsat as ones "we will have to resolve as part of this bankruptcy," *see* "First Day" Hearing Transcript, Delaware Bankruptcy Court, at 25-26 (Ex. G), and those claims seek to dramatically change (through "reformation") the terms of a contract that Ligado had described as a foundational "premise[]" of its capital structure and business plans, *see* Ligado Ch. 11 Plan Disclosure Statement, at 14 (Ex. B).

- Ligado argued in a pending motion before the bankruptcy court that Inmarsat should not be paid quarterly fees due under the Cooperation Agreement (totaling over $60 million per year) because of the offsetting damages Ligado alleges it will recover in this case. *See* Ligado Obj. to Mot. to Compel ¶¶ 1, 59 (Ex. L).

- Ligado is currently seeking bankruptcy court approval of the AST transaction, which is how Ligado proposes to pay Inmarsat amounts owed under the Cooperation Agreement. At the same time, the proposed AST transaction includes a contractual mandate for Ligado try, through the bankruptcy proceedings, to delay payments to Inmarsat as long as possible. *See* AST Framework Agreement § 5.6 (Ex. J). The litigation claims asserted here are clearly one means for Ligado to try to achieve that delay.

- Resolving Inmarsat's $525 million claim that Ligado deems "Disputed," *see* Ligado Bankruptcy Petition, at pg. 6 of 25 (Ex. D), will inevitably involve addressing whether and to what extent Ligado can use the claims here to delay or offset the amount due (again, for the avoidance of doubt, Inmarsat believes *no* delay or offset is appropriate).

- Ligado acknowledges that this case "will have an effect on its emergence" from bankruptcy. *See* Ligado Ch. 11 Plan Disclosure Statement, at 136 (Ex. B).

25. At bottom, the state court action here advances claims that are closely connected with the administration of Ligado's bankruptcy estate and other core bankruptcy functions, and thus removal is proper under either statutory ground in 28 U.S.C. § 1334(b).

26. The procedural requirements for removal are met, as well.

    (a) This Notice of Removal is timely because it is filed on April 4, 2025, which is within 30 days of "receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed." Fed. R. Bankr. P. 9027. The case was filed fewer than 30 days ago. *See* N.Y. State Compl. (Ex. A).

    (b) Copies of all pleadings and process in the removed case are attached hereto as required by Bankruptcy Rule 9027. The Summons and Complaint is attached as Exhibit A. A copy of the Proof of Service is attached as Exhibit M and a copy of the docket sheet is attached as Exhibit N.

    (c) A copy of this Notice of Removal will be filed with the Clerk of the Court for the state court action and served on Ligado, through its counsel of record, promptly after the filing of this Notice of Removal.

27. Under this Court's Amended Standing Order of Reference, M-431, this case should be "referred to the bankruptcy judges of this district." As required by Bankruptcy Rule 9027(a)(1), Inmarsat states that this is a core proceeding by which the bankruptcy court would be empowered to enter final orders and judgments, but, regardless, Inmarsat consents to the entry of final orders or judgments by the bankruptcy court.

## CONCLUSION

28. All of the requirements for removal have been satisfied, and Notice is hereby given that the state court action is removed to this Court.

Dated: New York, New York
April 4, 2025

Respectfully Submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ Benjamin Finestone
Benjamin Finestone
295 5th Avenue,
New York, NY 10016
(212) 849-7000
benjaminfinestone@quinnemanuel.com

Matthew Scheck
300 West 6th Street, Suite 2010
Austin, TX 78701
(737) 667-6100
matthewscheck@quinnemanuel.com

STEPTOE LLP

By: /s/ Charles Michael
Charles Michael
Jeffrey M. Reisner
Michael G. Scavelli
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
jreisner@steptoe.com
cmichael@steptoe.com
mscavelli@steptoe.com

Alfred M. Mamlet
(*pro hac vice* forthcoming)
1330 Connecticut Avenue NW
Washington, DC 20036
(202) 429-3000
amamlet@steptoe.com

*Counsel for Inmarsat Global Limited*